UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH H. TYRPAK, | ) | CASE NO. 1:10CV1996 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | **MEMORANDUM OPINION & ORDER** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Joseph H. Tyrpak ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court affirms the Commissioner's decision and dismisses Plaintiff's complaint in its entirety with prejudice:

## I.      PROCEDURAL AND FACTUAL HISTORY

On November 5, 2007, Plaintiff filed applications for DIB and SSI, alleging disability beginning November 1, 2006 due to sleep apnea, fibromyalgia, back problems, scoliosis, high blood pressure and depression. ECF Dkt. #11-6 at 1-22; ECF Dkt. #11-7 at 35. Plaintiff had explained in his disability report that he stopped working on September 28, 2007 after being fired because he could not lift objects and passed out while working on a product. ECF Dkt. #11-7 at 35. The SSA denied Plaintiff's applications initially and on reconsideration. ECF Dkt. #11-5 at 2-. 18. Plaintiff filed a request for an administrative hearing and on July 27, 2009, an ALJ conducted the hearing. *Id.* at 19-39; ECF Dkt. #11-3 at 2-51. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Kathleen Reis, a vocational expert ("VE"). ECF Dkt. #11-3 at 26

On September 24, 2009, the ALJ issued a decision denying benefits. ECF Dkt. #11-2 at 14-26. Plaintiff filed a request for review of the decision, but the Appeals Council denied the request. *Id.* at 2-10.

On September 7, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  On January 24, 2011, Plaintiff filed a brief on the merits.  ECF Dkt. #15. On March 24, 2011, Defendant filed a brief on the merits.  ECF Dkt. #17.  On March 28, 2011, Plaintiff filed a reply brief.  ECF Dkt. #18.

**II**.       **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

In his decision, the ALJ determined that Plaintiff suffered from fibromyalgia, scoliosis, hypertension, major depressive disorder, and obesity, which qualified as severe impairments under 20 C.F.R.  §404.1521 *et seq.* and 20 C.F.R. § 416.921 *et seq.*  ECF Dkt. #11-2 at 16.  The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id.*  He discounted Plaintiff's allegations of pain and limitations and concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work involving simple and repetitive tasks, with only occasional pushing, pulling, climbing and crawling, no climbing of ladders, ropes, or scaffolds, no overhead work, and no exposure to hazards such as dangerous machinery or heights.  *Id.* at 18.  Based upon this RFC and the testimony of the VE, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, including that of a mail room clerk, cashier and merchandise marker.  *Id.* at 25.

**III.**     **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI benefits.  These steps are:

1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.   An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.    If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.    If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.    STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997).

-3-

## V.    ANALYSIS

Plaintiff asserts that the ALJ lacked substantial evidence to find that he could perform limited light work.  ECF Dkt. #15 at 15-16.  In challenging the ALJ's RFC, Plaintiff contends that the ALJ erroneously evaluated his credibility and failed to state valid reasons for discrediting the opinions of his treating physicians.  *Id.* at 16.  He also contends that the ALJ failed to properly evaluate the opinions of nontreating sources.  *Id.*

### A.    CREDIBILITY ASSESSMENT

An ALJ may discount a claimant's credibility where the ALJ finds contradictions among the medical records, claimant's testimony, and other evidence.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997).  The court cannot substitute its own credibility determination for that of the ALJ.  *Kuhn v. Comm'r,* 124 Fed. App'x 943, 945 (6th Cir. 2005).  Claimants who challenge the ALJ's credibility determination "face an uphill battle."  *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir.2005).  The court must give the ALJ's credibility determinations great weight because "the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  "Since the ALJ has the opportunity to observe the demeanor of the witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference."  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir.1993).  Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir.2007).

The social security regulations establish a two-step process for evaluating pain.  *See* 20 C.F.R. §§ 404.1529, 416.929.  In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected

to produce such disabling pain.  *See id.; Stanley v. Sec'y of Health and Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).  Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms.  *See id.*  The ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities.  *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p.  *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990).  These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors.  *Felisky*, 35 F.3d at 1039-40.

In the instant case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms that he described.  ECF Dkt. #11-2 at 19. However, he found that Plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not credible beyond the RFC that the ALJ determined.  *Id.*  For the following reasons, the Court finds that substantial evidence supports this determination.

Contrary to Plaintiff's assertion, the ALJ did not select only those sections of the record that supported his credibility determination.  ECF Dkt. #15 at 10.  The ALJ reviewed Plaintiff's work history, his testimony, and compared written statements on his disability applications regarding his symptoms to his statements made to the treating and examining medical sources.  ECF Dkt. #11-2 at 19-24.  He also reviewed the medical evidence in the record, Plaintiff's treatment modalities and treatment compliance, and the findings and opinions of the medical sources.

-5-

Plaintiff complains that the ALJ improperly used the fact that he worked after his alleged onset disability date and his lack of medical treatment until eight months after his alleged onset date as bases for discounting his credibility.  ECF Dkt. #15 at 9.  Plaintiff points out that the SSA suggested Plaintiff's onset date of November 2006 after he told them that he had worked after this date.  *Id.*  This does not negate the facts that Plaintiff was able to work after the onset date or that he did not seek medical treatment for his impairments until eight months after this period.  ECF Dkt. #11-3 at 10.  The ALJ acknowledged that the work that Plaintiff performed after his alleged onset date was not substantial gainful activity.  ECF Dkt. #11-2 at 16.  However, the ALJ properly noted that while Plaintiff had alleged a November 2006 onset date, the record contained no evidence of medical treatment prior to July 2007, which suggested that Plaintiff's impairments were not as disabling as he alleged.  ECF Dkt. #11-2 at 19.  "In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that a claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir.2004).  It was reasonable for the ALJ to discredit Plaintiff's allegations of disabling pain due to his ability to work and his failure to seek treatment during this time period.

Moreover, the ALJ's mentioning of Plaintiff's work history and his lack of treatment during this period was not the ALJ's sole or main reason for discounting Plaintiff's credibility.  The ALJ reviewed Plaintiff's testimony at the hearing and compared that testimony with the statements that Plaintiff provided to medical providers regarding his daily living activities.  The ALJ noted that Plaintiff's inconsistent reporting of his daily activities undermined his credibility.  ECF Dkt. #11-2 at 6-11.  The ALJ pointed out that Plaintiff reported that he spent at least half of the day in bed due to fatigue and body pain and he tried to avoid social activities such as even going to the grocery store when he could.  ECF Dkt. #11-2 at 23.  However, the ALJ noted that Plaintiff was able to work full-time as recently as October 2007 and that Plaintiff had reported broader daily activities to medical providers that included using the internet, reading, working with pottery, being a member of Beekeepers Society and the Medina Art League, going to the library and cooking.  *Id.*, citing ECF Dkt. #11-25 at 14.  The ALJ also cited to statements made to medical providers by Plaintiff that he

was even attending or participating in an art show around November 13, 2008.  ECF Dkt. #11-2 at 23, citing ECF Dkt. #11-25 at 12.  The ALJ also noted that while Plaintiff had reported that he stopped driving in 2008 because he was passing out unexpectedly, the record showed that Plaintiff had driven himself to a consultative examination with Dr. Koricke in September 2008.  *Id.*, citing ECF Dkt. #11-22 at 3 ("Joseph Tyrpak...came to the office alone and drove himself to and from the appointment.").  Plaintiff correctly points out that a claimant need "not vegetate in a dark room excluded from all forms of human and social activity."  *Smith v. Califano*, 637 F.2d 968, 971 (3rd Cir. 1981).  However, some of the activities that Plaintiff reported here are more than minimal activities.  Moreover, the ALJ could properly rely upon the fact that Plaintiff's reports of extremely limited physical and social activity were inconsistent with the statements that he made to his medical providers which showed much more physical and social activity than reported in pursuit of his disability applications.  ECF Dkt. #11-2at 20.  The ALJ properly found that these activities belied Plaintiff's complaints of disabling pain or mental impairment.  *Walters*, 127 F.3d at 531 (ALJ may consider claimant's daily living activities in evaluating credibility).

The ALJ also noted Plaintiff's non-compliance with treatment modalities and Plaintiff's failure to pursue recommended treatments as additional bases for discounting his credibility.  ECF Dkt. #11-2 at 19.  Plaintiff complains that the ALJ should not have relied upon his inability to use a prescribed BIPAP machine for his sleep apnea because he had reported feeling claustrophobic when wearing it.  ECF Dkt. #15 at 9-10.  Again, however, the ALJ does not solely rely upon Plaintiff's inability to use the BIPAP machine as a basis for discounting his credibility.  The ALJ actually noted in his decision Plaintiff's testimony that he could not wear the machine because he felt claustrophobic. ECF Dkt. #11-2 at 19.  However, the ALJ referred to Plaintiff's failure to pursue further polysomnograph and blood oxygen level studies recommended by his doctors for his sleep apnea.  ECF Dkt. #11-2 at 19.  The ALJ also referred to doctor's notes indicating that Plaintiff declined recommended further diagnostic testing.  *Id.*  The ALJ cited to Dr. Castele's February 7, 2008 progress note indicating that Plaintiff was not interested in continuing to use the BIPAP machine and when he suggested treating him with supplemental oxygen, Plaintiff "refuses at this time to even consider any further management."  ECF Dkt. #11-11 at 7.  The ALJ also cited to Dr.

Castele's February 14, 2008 progress note that Plaintiff's use of the BIPAP machine was discontinued because Plaintiff could not tolerate it, but Plaintiff refused a polysomnogram and refused to have any other evaluation that he had suggested.  ECF Dkt. #11-2 at 19, citing ECF Dkt. #11-11 at 5.  The ALJ also cited to Dr. Castele's February 25, 2008 progress note indicating that while Plaintiff did have some pulse oxygen studies done, he did not want Dr. Castele to schedule a suggested cardiac evaluation even though Dr. Castele noted his concern that oxygen alone may not be adequate.  *Id.* at 3.  The ALJ also mentioned Dr. Castele's notation that Plaintiff "actually states he feels reasonably well at this time."  *Id*.  The ALJ further noted Plaintiff's non-compliance with the recommendations of his mental health treatment providers and his failure to take prescribed medications.  ECF Dkt. #11-2 at 21, citing ECF Dkt. #11-25 at 27.  Again, it is reasonable to expect that a claimant who is suffering from disabling pain will seek examination or treatment and the ALJ can doubt his credibility for a failure to do so.  *Strong*, 88 Fed. App'x at 846.

Finally, Plaintiff asserts that the ALJ should not have discredited Plaintiff's credibility on the basis that he failed to lose weight as recommended by this doctors in order to help his fibromyalgia symptoms.  Again, even if the ALJ committed error in doing so, the numerous factors that the ALJ properly considered and cited constitute substantial evidence to support his credibility determination.

For these reasons, the Court finds that substantial evidence supports the ALJ's credibility determination.

### B.   **MEDICAL OPINIONS**

Plaintiff also challenges the ALJ's RFC by asserting that he failed to adequately articulate his reasons for discounting the opinions of his treating physicians and, lacked substantial evidence to discount those opinions.  ECF Dkt. #15 at 10-13.  He also asserts that the ALJ did the same with regard to the opinions of examining and consulting agency medical source opinions.  *Id*. at 13-16.

### 1.   **TREATING SOURCE OPINIONS**

Plaintiff contends that the ALJ erred in his treatment of the opinions of Plaintiff's treating sources. ECF Dkt. #15 at 10.  Plaintiff contends that the ALJ failed to state valid reasons for discrediting their opinions.

An ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544.  A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). Accordingly, if that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

However, "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) quoting  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.1985).  When an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors in determining the weight to give to that opinion:  the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.*

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  SSR 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*  This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999).

Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."  *Id.*  If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

"When a treating physician...submits an opinion on an issue reserved to the Commissioner-such as whether the claimant is 'disabled' or 'unable to work'- the opinion is not entitled to any particular weight." *Turner v. Comm'r of Soc. Sec.*, No. 09-5543, 2010 WL 2294531 at *4, (6th Cir. June 7, 2010), unreported; *see also* 20C.F.R. §416.927(e)(1).  "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Id.* (internal quotation and citation omitted).  Moreover, it is the ALJ who ultimately determines a claimant's RFC.  *See* 20 C.F.R. 404.1546(c), 416.946(c) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician").

Plaintiff first contends that the ALJ stated invalid reasons for rejecting the opinions of Drs. Karim and Kuchynski.  ECF Dkt. #15 at 10-11.  Plaintiff asserts that the doctors' opinions were consistent with one another and were consistent with Plaintiff's account of his daily living activities. *Id.* at 11.

Dr. Karim began treating Plaintiff as his primary care physician on August 18, 2008, nearly two years after Plaintiff's alleged disability onset date.  ECF Dkt. #15 at 5.  Dr. Karim spoke with Plaintiff, who related that he had episodic syncope and worsening fibromyalgia symptoms.  ECF Dkt. #11-13 at 32.  Dr. Karim noted that Plaintiff had reported lightedheadness and dizziness, with some loss of consciousness for the last six to seven months, but Plaintiff had not had an EEG or CT scan.  *Id.*  Dr. Karim examined Plaintiff and noted his medical history which included diagnoses of fibromyalgia, chronic fatigue, depression, sleep apnea and syncopal episodes.  *Id.*  Dr. Karim ordered a tilt test, CT scan of the head and an EEG.  *Id.*  at 33.  He noted that Plaintiff had a C-PAP machine for his sleep apnea but he reported not using it as he was doing well.  *Id.*  He also referred Plaintiff to a psychiatrist for evaluation of his depression, and to Dr. Diab for evaluation of his fibromyalgia.  *Id.*  An EEG performed thereafter showed normal results.  ECF Dkt. #11-14 at 2.  A CT scan of the head showed no evidence of hemorrhage or infarction.  *Id.* at 3.  A tilt table test also revealed normal results.  *Id.* at 9.

On June 11, 2009, Dr. Karim completed a physical RFC form on behalf of Plaintiff.  ECF Dkt. #11-22 at 47.  The form specifically advised that it was important that the doctor relate the

-10-

particular medical findings supporting the reduced functional capacities that he found for Plaintiff. *Id*.  Dr. Karim opined that Plaintiff could lift and carry up to a maximum of five pounds occasionally, and it appears that he opined that Plaintiff could stand/walk up to fifteen minutes per eight-hour workday, and sit for the same period of time.  *Id*. at 47.  In the section requesting Dr. Karim's medical findings that supported his assessment, he merely stated "See Dr. Marie Kuchinsky's evaluation."  *Id*.  Dr. Karim also found Plaintiff could never climb, balance, kneel or crawl, but could occasionally stoop and crouch.  *Id*. at 48.  He further opined that Plaintiff had physical function limitations in reaching, handling, and pushing and pulling, and certain environmental limitations in being around heights and dangerous machinery, temperature extremes, dust and fumes.  *Id*.  When asked to identify the medical findings and restrictions regarding these opinions, Dr. Karim left this section of the form blank.  *Id*.

Dr. Kuchynski, a board-certified rheumatologist, saw Plaintiff at Dr. Karim's request on November 14, 2008.  ECF Dkt. #11-22 at 32.  She wrote a letter to Dr. Karim opining that the cause of Plaintiff's pain was that he was suffering from fibromyalgia.  *Id*.  She noted that he showed 18/18 tender points on examination that was consistent with the criteria for fibromyalgia.  *Id*.  She started him on Lyrica for his fibromyalgia and informed Plaintiff to follow-up with her in three weeks.  *Id*.

On April 30, 2009, Dr. Kuchynski completed the same RFC form that Dr. Karim completed, which contained the same advisement as to the importance of medical findings.  ECF Dkt. #11-22 at 35.  Dr. Kuchynski opined that Plaintiff could lift and carry a maximum of less than ten pounds occasionally and up to five pounds frequently.  *Id*.  She explained the medical findings supporting her assessment as "diffuse joint & muscle pain."  *Id*.  She concluded that Plaintiff could stand/walk and sit up to two hours each per eight-hour workday for fifteen minutes at a time, explaining that "muscle & joint pain preclude staying in one position too long."  *Id*.  She opined that Plaintiff could never balance, stoop, crouch, kneel or crawl, and could only occasionally climb due to "joint and muscle pain."  *Id*. at 36.  She further found that Plaintiff had limitations in pushing/pulling due to "pain" and when asked for the medical findings supporting this particular assessment, she stated "fibromyalgia."  *Id*.  Finally, Dr. Kuchynski opined that Plaintiff had the environmental limitations of exposure to heights, moving machinery, temperature extremes and vibration, explaining as her

-11-

medical findings that these things "affect level of pain." *Id*.  She also stated "fibromyalgia" as the medical findings supporting this particular assessment.  *Id*.

The ALJ articulated good reasons for giving less than controlling weight to the opinions of Drs. Karim and Kuchynski. It must be remembered that opinions on a claimant's RFC or whether he is disabled "are not medical opinions...but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case, i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(e); accord *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.")(citation and brackets omitted). Thus, statements from medical sources about what a claimant can still do are relevant, but not determinative and are not given special significance. *Id.* Further, "a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits.... Some people may have a severe case of fibromyalgia as to be totally disabled from working but most do not and the question is whether claimant is one of the minority." *Vance v. Comm 'r of Soc. Sec*., 260 Fed. App'x 801, 806 (6th Cir.2008) (citing *Rogers*, 486 F.3d 234; *Preston v. Sec'y of Health and Human Servs*., 854 F.2d 815 (6th Cir. 1988)).

The ALJ thoroughly reviewed the findings and opinions of both treating physicians and articulated good reasons for attributing less than full weight to them.  Despite the notation on the form of the importance of providing support for his findings, Dr. Karim failed to provide any explanation to support his opinion, except to state "see Dr. Marie Kuchinsky's evaluation."  ECF Dkt. #11-22 at 47.  As to Dr. Kuchynski's opinion, the ALJ noted her rheumatological findings of positive trigger points for fibromyalgia, but he found that she offered no other specific findings beyond reference to diffuse tender points in her subsequent treatment notes.  *Id*.  The ALJ acknowledged that the absence of significant or consistent clinical or diagnostic findings did not on its own suggest that Plaintiff's fibromyalgia was not severe.  *Id*.  However, he indicated that he attributed less weight to her limitations because they were inconsistent with the evidence as a whole and with Plaintiff's daily living activities and ability to work nearly full time for a period after the alleged onset of his impairments.  *Id*.  The ALJ pointed out that Plaintiff had worked nearly full-time

-12-

until October 2007, well after his alleged onset date, and he reported to his treatment providers more physical activities than he reported in furtherance of his disability applications and to the ALJ at the hearing, such as driving, working with pottery on a daily basis, reading, using the internet and performing household chores.  ECF Dkt. #11-2 at 23; *see also* ECF Dkt. #11-3 at 28-29; ECF Dkt. #11-25 at 14 (typical day of Plaintiff described to Dr. Ranjan as included one hour on the internet, laundry, cleaning, pottery, reading, and listing Beekeepers Society, Medina Art League, library, and cooking.).  The ALJ also cited to statements made to medical providers by Plaintiff that he was even attending or participating in an art show around November 13, 2008.  ECF Dkt. #11-2 at 23, citing ECF Dkt. #11-25 at 12.  The ALJ also noted that while Plaintiff had reported that he stopped driving in 2008 because he passes out unexpectedly, the record showed that Plaintiff had driven himself to a consultative examination with Dr. Koricke in September 2008.  *Id*., citing ECF Dkt. #11-22 at 3 ("Joseph Tyrpak...came to the office alone and drove himself to and from the appointment.").  The ALJ could consider these activities and properly found them inconsistent with the treating physician's RFC assessments.

Accordingly, the Court finds that the ALJ's provided good reasons for giving less than full weight to the opinions of Drs. Karim and Kuchynski, and the lack of sufficient support by the doctors for their RFCs, combined with the inconsistency of their RFCs with Plaintiff's reports of his daily activities, constitutes substantial evidence to support the ALJ's decision to attribute less than full weight to their opinions.

The same analysis applies to the opinion of Dr. Syed, who treated Plaintiff for his fainting spells.  On August 13, 2008, Plaintiff was examined by Dr. Syed and indicated that Plaintiff had sleep apnea which may be contributing to his fainting spells.  ECF Dkt. #11-13 at 35. Dr. Syed's review of Plaintiff's systems produced negative results, including a normal chest examination, normal cardiovascular examination, unlabored respiratory breathing, appropriate affect and mood, and normal neurological examination.  *Id*. Dr. Syed's impressions included syncope/presyncope, sleep apnea, hyperlipidemia, and hypertension.  *Id*. at 36.  He planned to do a tilt table test, and blood test.  *Id.* All of these tests produced normal results.

Dr. Syed completed a RFC form on June 11, 2009 and opined that due to his sleep apnea and back pain, Plaintiff was limited to lifting and carrying ten pounds.  ECF Dkt. #11-22 at 45.  Dr. Syed did not complete the section asking whether the amount that Plaintiff could lift was on an occasional or frequent basis.  *Id.*  Dr. Syed found that Plaintiff's ability to sit was not affected, and he opined that Plaintiff could never climb or kneel, but he could occasionally stoop, crouch and crawl, and he could frequently balance.  *Id.* at 45-46.  Dr. Syed provided no medical findings to support these conclusions.  He also found that Plaintiff's functions of reaching, handling, feeling, pushing/pulling, seeing, hearing and speaking were all affected by his impairment, but provided no medical findings supporting this assessment and did not explain how these functions were affected.  *Id.* at 46.

The ALJ provided good reasons for attributing less than full weight to the opinion of Dr. Syed as he explained that the medical evidence did not support the limitations, including those of restricted abilities in seeing, hearing and speaking since they were not even alleged by Plaintiff.  ECF Dkt. #11-2 at 21.  Dr. Syed provided no medical support for his findings on any of these restrictions beyond his diagnoses of sleep apnea and back pain.  ECF Dkt. #11-22 at 45.  Mere diagnosis of an impairment is insufficient to establish disability.  *See Foster v. Bowen,* 853 F.2d 483, 489 (6th Cir. 1988); *see also* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3)("[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

Plaintiff also takes issue with the ALJ's decision to afforded little weight to the opinions of Dr. Ranjan, Plaintiff's treating psychiatrist.  ECF Dkt. #15 at 12-13.  Dr. Ranjan included the following as Plaintiff's significant clinical mental status abnormalities: "depression, anxiety, insomnia, v/h-shadows, flashbacks from childhood abuse (physical & mental), anger issues, poor energy, poor motivation, decreased self esteem, h/o mania."  ECF Dkt. #11-22 at 9.  In describing Plaintiff's "significant restriction of daily activities," Dr. Ranjan noted that Plaintiff had low energy, his fibromyalgia limited his functioning, he had chronic fatigue, little motivation, sleep apnea and driving restrictions due to passing out.  *Id.*

The Court finds that the ALJ sufficiently articulated his reasons for attributing little weight to Dr. Ranjan's opinions and substantial evidence supports his determination.  The ALJ first noted

-14-

Dr. Ranjan's very limited treatment history with Plaintiff.  The ALJ indicated that Dr. Ranjan completed a medical statement based upon his treatment of Plaintiff from September 10, 2008 to September 24, 2008.  ECF Dkt. #11-2 at 21.  The medical statement indicates that Dr. Ranjan first examined Plaintiff on September 10, 2008 and last treated him on September 24, 2008.  ECF Dkt. #11-22 at 8.  The Social Security Regulations set forth the factors that an ALJ shall consider in evaluating opinion evidence.  *See* 20 C.F.R. §§ 404.1527, 416.927.  One of the factors that an ALJ shall consider in evaluating such evidence is the length of the treatment relationship.  20 C.F.R. §§ 404.1527(d)(2)(i), 20 C.F.R. § 416.927(d)(2)(i) ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's opinion.").  The ALJ also discounted Dr. Ranjan's opinion because it stemmed largely from Plaintiff's physical condition rather than from psychiatric/psychological conditions, which was Dr. Ranjan's area of expertise.  ECF Dkt. #11-2 at 21.  Dr. Ranjan described Plaintiff's restrictions in terms of his physical impairments, including low energy, fibromyalgia, chronic fatigue, sleep apnea and syncope.  ECF Dkt. #11-22 at 9.  This was proper for the ALJ to consider under the Regulations.  20 C.F.R. §§ 404.1527(d)(2)(ii), 416.927(d)(2)(ii)(explaining that a treating source who has more knowledge about an impairment but does not treat that impairment will be given more weight than a nontreating source but less weight than that of the physician who treated the claimant for that particular impairment); s*ee also* 20 C.F.R.§§ 404.1527(d)(5), 20 C.F.R. § 416.927(d)(5) ("we generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").  Finally, the ALJ found that Dr. Ranjan's opinion as to Plaintiff's RFC was not consistent with the weight of the evidence.  This is also supported by substantial evidence in that Dr. Ranjan noted Plaintiff's reports that he isolated himself, he avoided leaving the house, and he had limited positive relationships.  ECF Dkt. #11-22 at 9.  However, Plaintiff had reported to his counselor in November 2008 that he was planning on spending three days over the holiday with his girlfriend and he had an art show over the weekend.  ECF Dkt. #11-25 at 12.  He also identified activities of participating in the Beekeepers Society, Medina Art League, going to the library, and surfing the internet.  *Id.* at 15.

For these reasons, the Court finds that the ALJ properly articulated his reasons for attributing less weight to Dr. Ranjan's opinion and substantial evidence supports that determination.

Finally, Plaintiff challenges the ALJ's decision to give less than full weight to the opinion of Dr. Akhigbe, Dr. Ranjan's social worker associate. ECF Dkt. #15 at 12. On June 18, 2009, Dr. Akhigbe completed a questionnaire in which she indicated that Plaintiff was not able to perform any tasks relating to understanding and memory or sustained concentration and persistence, including remembering locations and work-like procedures, understanding, remembering and carrying out short, simple instructions, and making simple work-related decisions on a regular, reliable and sustained schedule. ECF Dkt. #11-23 at 2-3. She also opined that Plaintiff could not perform any adaptation abilities, such as responding appropriately to work setting changes or being aware of normal hazards on a regular, reliable and sustained schedule. *Id.* at 2. She further found that Plaintiff could not interact appropriately, accept instructions and criticism from supervisors, or get along with co-workers without distracting them or exhibiting behavioral extremes on a regular, reliable and sustained schedule. *Id.* at 3. Dr. Akhigbe opined that Plaintiff could ask simple questions and maintain socially appropriate behavior and adhere to basic standards of cleanliness and neatness, but would have noticeable difficulty more than 20 percent of the workday or workweek. *Id.*

As support for these extreme limitations, Dr. Akhigbe cited to Plaintiff's panic disorder with agoraphobia, severe bipolar disorder with psychotic features, post-traumatic stress disorder and paranoid personality disorder. ECF Dkt. #11-23 at 3. She described Plaintiff's report of panic attacks which he reported impacted his ability to leave the house. *Id.* She indicated that Plaintiff's depression and psychotic symptoms impacted his cognitive abilities, and his bipolar and paranoid personality caused him to isolate himself from others. *Id.* at 3-4. Dr. Akhigbe also noted Plaintiff's reports of severe physical pain. *Id.* at 4.

The Court finds that the ALJ articulated good reasons for attributing less than full weight to the opinion of Dr. Akhigbe. The ALJ explained that Dr. Akhigbe appeared to have no personal treating relationship with Plaintiff beyond the June 18, 2009 diagnostic assessment. ECF Dkt. #11-2 at 21. This is an appropriate factor for the ALJ to consider and raises the question as to whether Dr. Akhigbe should be considered a treating source at all. 20 C.F.R. §§ 404.1527(d)(2)(i), 20 C.F.R.

§ 416.927(d)(2)(i).  Moreover, the ALJ found that Dr. Akhigbe's opinion was inconsistent with the record as a whole.  Substantial evidence supports this finding as well, as explained above, since the ALJ appropriately discounted Plaintiff's credibility based upon his conflicting daily living activity reports and his ability to work after his alleged onset date.  The ALJ pointed out that Plaintiff had worked after his alleged onset date until October 2007 and he had driven to an appointment despite telling others he could not drive, and he reported to medical providers that he worked with pottery, used the internet, attended and/or participated in an art show and had a girlfriend.  ECF Dkt. #11-2 at 23; *see also* ECF Dkt. #11-2 at 23, citing ECF Dkt. #11-25 at 12; ECF Dkt. #11-2 at , citing ECF Dkt. #11-22 at 3.

Accordingly, the Court finds that the ALJ provided sufficient reasons for his decision to give less than full weight to each of Plaintiff's treating physicians and substantial evidence supports his decision.  It must be remembered that the Court's review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).  The Court cannot reverse the Commissioner's findings merely because substantial evidence exists in the record to support a different conclusion. *Buxton*, 246 F.3d at 772.  "This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference."  *Id.*  Here, the Court finds that ALJ has properly applied the treating physician rule and was within the zone of choice in reaching his decision.

## 2.  NON-TREATING MEDICAL SOURCE OPINIONS

Plaintiff also asserts that the ALJ improperly evaluated the opinions of the non-treating physicians.  ECF Dkt. #15 at 13-14.  Specifically, he asserts that "anyone who has seen Tyrpak, except for the first two consultative examiners, Dr. Saghafi, the first consultative examiner who saw him for only 10 minutes according to Tyrpak, and Dr Sunbury, the psychologist, have found that he is incapable of work for either psychological or physical reasons." *Id.* at 13.  Plaintiff complains that the ALJ "cherry pick[ed] the evidence" in rejecting the opinion of agency examining psychologist Dr. Koricke.  *Id.*

-17-

The Court reminds Plaintiff that a claimant's RFC and whether he is disabled are issues reserved to the ALJ.  Statements by medical sources that a claimant is disabled or an opinion as to a claimant's RFC are given no special significance.  20 C.F.R. §§ 404.1527(e); 416.927(e). Moreover, "[s]tate agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  SSR 96-6p.  Accordingly, opinions from agency medical sources are considered opinion evidence. 20 C.F.R. §§ 404.1527(f), 416.927(f).  The regulations mandate that "[u]nless the treating physician's opinion is given cont-+lling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).  More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight.  *Hart v. Astrue*, No. 3:08CV191, 2009 WL 2485968, at *8 (S.D. Ohio Aug. 5, 2009).  Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians, including weighing the supportability and consistency of the opinions, and the specialization of the physician. *See* 20 C.F.R. §§ 404.1527(d), (f), 416.927(d), (f).

Contrary to Plaintiff's assertion, the ALJ did not "cherry pick" the evidence.  In his decision, he reviewed each medical source opinion, the favorable and unfavorable findings in each and the other evidence in the record.  ECF Dkt. #11-2 at 20-23.  He noted the weight that he gave to each opinion and explained the reasons for the weight that he afforded.  *Id.*  This includes the opinions of the nontreating physicians.  *Id.*

The ALJ reviewed the findings and opinions of nontreating sources Drs. Saghafi and Albert as to Plaintiff's physical RFC.  ECF Dkt. #11-2 at 21-22.  He indicated that he gave significant weight to Dr. Saghafi's opinion and full weight to Dr Albert's opinion.  *Id.*  The ALJ noted that Dr. Saghafi had conducted a physical examination and diagnosed Plaintiff with hypertension, scoliosis

of D-L spine, and fibromyalgia and sleep apnea per history.  *Id.*  The ALJ cited Dr. Saghafi's notes of Plaintiff's complaints of pain and loss of consciousness and his reduced range of dorsolumbar spine and hip pain upon examination.  *Id.*  Nevertheless, Dr. Saghafi found that Plaintiff was able to lift and carry 20-30 pounds frequently and 31-70 pounds occasionally, and he could sit, stand, and walk 8 hours per day, climb stairs, operate hand controls, and drive a car.  *Id.*  Dr. Saghafi also noted that Plaintiff's speech, memory, orientation and attention were within the normal range.  *Id*.

In his May 30, 2008 review of Plaintiff's records, Dr. Albert listed Plaintiff's primary diagnosis as fibromyalgia with a secondary diagnosis of sleep apnea, and other diagnoses of depression, hypertension and scoliosis.  ECF Dkt. #11-13 at 17.  He found that Plaintiff could perform light work with frequent climbing of ramps and stairs, balancing, kneeling and crouching, occasional kneeling and crawling, and no climbing of ladders, ropes or scaffolds.  *Id*. at 19.  He also found that Plaintiff had to avoid being around unprotected heights, could not operate dangerous machinery, could not drive, and could not work around machinery with exposed moving part due to allegations of passing out and his sleep apnea.  *Id*. at 21.  Dr. Albert supported his limitations by citing to Plaintiff's noncompliance with the BIPAP machine for his sleep apnea, his stable gait, ability to stand and walk on his toes and heels, lack of muscle spasms in his back, equal reflexes, and Plaintiff's ability to perform his daily living activities and hobbies of gardening, pottery and woodworking.  *Id*. at 18.  Dr. Albert also found no evidence in the record to substantiate Plaintiff's complaint that he was losing strength in his arms.  *Id.*

The ALJ explained that the opinions of Drs. Saghafi and Albert were consistent with the evidence as a whole and substantial evidence supports that determination.  The ALJ noted Dr. Saghafi's findings of reduced range of motion, but normal reflexes and pulses in his extremities, no muscle spasms and normal sensation.  ECF Dkt. #11-2 at 21.  While acknowledging that such objective medical findings did not establish that Plaintiff's fibromyalgia was not disabling or a severe impairment that required restrictions, the ALJ did use such findings to determine that Plaintiff's other impairments were not as limiting. *Id*. at 20 ("The absence of significant or consistent clinical or diagnostic findings does not, in and of itself, suggest that the claimant's fibromyalgia is not a severe impairment, however it does establish that the claimant's other physical impairments

do not subject him to additional or more severe functional limitations than those imposed by his fibromyalgia.").  The ALJ also noted Dr. Albert's findings that Plaintiff's reports of reduced strength were not supported by the notes of his treatment providers.  *Id.* at 22.  Dr. Albert also found that Plaintiff's independence in his daily living activities  showed that he could perform light work with some postural and environmental limitations.  *Id.*

The ALJ further found that Plaintiff's work history and reports of activities that he engaged in contradicted the severe limitations that Plaintiff reported as a result of his impairments and corresponded with the ALJ's RFC.  ECF Dkt. #11-2 at 23-24.  The ALJ noted Plaintiff's reports of very limited activities and having to spend 50-60% of his day in bed.  *Id.* at 23.  The ALJ found this report inconsistent with Plaintiff's reports that he worked with pottery, attended and participated in art shows, performed household chores, and worked nearly full-time for almost a full year after his alleged onset date.  *Id.*  The ALJ also cited to Plaintiff's report that he could not drive a car because he passes out unexpectedly but contrasted that with a consultative examination doctor's note that Plaintiff had driven himself to his doctor's appointment.  *Id.*

As pointed out by the ALJ, the opinions of Drs. Saghafi and Albert were consistent with the overall record in this case.  Plaintiff has not established otherwise.  While Plaintiff cites to the opinions of Drs. Karim, Kuchynski and Syed as support for findings inconsistent with those of Drs. Saghafi and Albert, the ALJ adequately explained his reasons for discounting the treating physician opinions and substantial evidence supports his decision to do so.  He also adequately articulated his reasons for the weight given to Drs. Saghafi and Albert's opinions and substantial evidence supports that determination.

As to Plaintiff's mental RFC, the ALJ's limitations to simple, repetitive work were consistent with the opinions of Drs. Sunbury, Lewis and Flynn.  ECF Dkt. #11-2 at 22-23.  Dr. Sunbury examined Plaintiff on March 17, 2008 at the request of the agency.  ECF Dkt. #11-12 at 7-8.  He found Plaintiff's responses relevant and coherent, Plaintiff denied having panic attacks, and he found Plaintiff oriented, with average intellectual functioning, and low-average insight and judgment.  *Id.* at 8-9.  Plaintiff reported feeling worthless, angry and depressed.  *Id.*  Plaintiff reported that he did his own cooking and laundry, and did pottery whenever he can.  *Id.* at 9.  Plaintiff also reported to

-20-

Dr. Sunbury that he might go to a beekeeping meeting that night and that he enjoyed reading.  *Id.* Dr. Sunbury diagnosed Plaintiff with major recurrent depressive disorder and found that Plaintiff was mildly impaired in relating to others, unimpaired in understanding, remembering and following instructions, and in maintaining concentration, persistence and pace, and moderately impaired in withstanding stress and pressures of daily work activity.  *Id.* at 9.

On March 23, 2008, Dr. Lewis reviewed Plaintiff's record for the agency and completed a psychiatric review technique form.  ECF Dkt. #11-12 at 13-26, She reviewed Plaintiff's major depressive disorder diagnosis under Listing 12.04 for affective disorders and found that he had no restrictions in daily living activities from the impairment, and had mild difficulties in social functioning and maintaining concentration, persistence and pace.  *Id.* at 23.  Dr. Lewis provided a thorough explanation for her findings, reviewing Plaintiff's mental health history, which included a report to Dr. Sunbury that he was hospitalized for one night fifteen years ago due to mental health concerns.  *Id.* at 25.  Dr. Lewis reviewed Dr. Sunbury's examination of Plaintiff and the fact that a psychological condition had been ruled out on Plaintiff's claim previously, but he had later stated that it was disabling and that he was receiving counseling at Medina Health Ministry.  *Id.*  Dr. Lewis noted that the only records provided by that source related to Plaintiff's physical impairments.  *Id.* Dr. Lewis also noted that Plaintiff told the examiner that he was taking Elavil, but he did not report the medication on his application.  Dr. Lewis agreed with Dr. Sunbury's evaluation, except his finding that Plaintiff was moderately impaired in tolerating day to day work stress and pressures.  *Id.*  Dr. Lewis explained that this finding is inconsistent with Plaintiff's daily living activities, his presentation and the objective consultative examination data.  *Id.*

On October 23, 2008, Dr. Flynn reviewed Plaintiff's case file and completed a psychiatric review technique form and a mental RFC form at the request of the agency.  ECF Dkt. #11-22 at 13-30.  Dr. Flynn reviewed Plaintiff's diagnosis of major recurrent moderate depressive disorder under Listing 12.04 for affective disorders and found that he had mild restrictions in daily living activities from the impairment, and moderate difficulties in social functioning and maintaining concentration, persistence and pace.  *Id.* at 16, 23.  On the mental RFC form, Dr. Flynn found that Plaintiff had no significant limitations in:   understanding, remembering and carrying out short and simple

instructions; understanding and remembering detailed instructions; sustaining an ordinary routine without special supervision; making simple work-related decisions; being aware of normal hazards and taking appropriate precautions; traveling; and setting realistic goals. *Id*. at 27-28.  She found that Plaintiff was moderately limited in: maintaining attention and concentration for concentrated periods of time; performing activities within a schedule or maintaining regular attendance and being punctual; working with others without being distracted by them; completing a normal workday or workweek without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; social interaction with the public, coworkers, accepting instructions and responding appropriately to criticism from supervisors, maintaining socially appropriate behavior in the workplace; and the ability to respond appropriately to changes in the work setting.  *Id.*

Dr. Flynn also provided a detailed explanation for her findings.  ECF Dkt. #11-22 at 29.  She reviewed the medical evidence in the file, including the March 2008 psychological evaluation, and Plaintiff's allegations of worsening psychological symptoms, such as hallucinations and hearing voices.  *Id*. at 29.  She also reviewed the psychological treating source notes and the psychological evaluation done by Dr. Koricke, an agency examining psychologist on September 16, 2008.  *Id*.  She noted that Plaintiff did not indicate interference with his daily living activities and the findings that Plaintiff's insight and judgment were intact.  *Id*.  She further found that while Dr. Koricke had opined that Plaintiff would not be able to withstand the stress and pressures of day to day work activity, she found Plaintiff only moderately limited in this area and in social interaction because he was able to interact with the medical community, reported that he had no difficulty interacting with authority, was able to handle a range of daily living activities, could follow-up with treatment and had no problems going out alone.  *Id*.  Dr. Flynn found that Plaintiff would function best in an atmosphere with repetitive tasks, infrequent changes in routine, and no fast-pace or high production jobs with only infrequent and superficial social interaction.  *Id*.

Dr. Koricke had interviewed Plaintiff at the request of the agency on September 16, 2008.  ECF Dkt. #11-22 at 3.  She reviewed his medical history, family history and psychiatric treatment history with him.  *Id.* at 3-4.  She found that Plaintiff was passive and withdrawn and was clearly

-22-

depressed, but had coherent and relevant speech, was properly oriented and showed insight and judgment into his issues. *Id.* at 4-5. Dr. Koricke found that Plaintiff demonstrated a flat and blunt affect throughout the interview and was anxious and had difficulty maintaining his attention. *Id.* at 5. He reported feeling lonely and isolated and reported hearing voices upon awaking and saw shadows at times. *Id.* Dr. Koricke found that Plaintiff did not show any psychotic symptoms. *Id.* Dr. Koricke noted that Plaintiff recently sought counseling one week prior to her examination of him *Id.* Plaintiff also reported to Dr. Koricke that he could not sleep, had to force himself to get up and get dressed everyday, and he reported that his typical day involved getting up, eating breakfast, showering, dressing, and sitting and watching television until he went to bed. *Id.* at 6. He also reported that he rarely socialized and mainly stayed at home by himself everyday. *Id.*

Dr. Koricke diagnosed Plaintiff with major recurrent moderate depressive disorder and found it "unlikely" that he could function at a job "at this time." ECF Dkt. #11-22 at 6. She found that Plaintiff lacked the ability to concentrate and perform job functions, could not communicate effectively with peers, co-workers or supervisors, and could not appropriately adapt to novel situations. *Id.* Summarizing, Dr. Koricke stated "[t]hus, from a psychological standpoint, Mr. Tyrpak is not viewed as able to withstand the stress and pressures of working on a daily basis." *Id.* She thereafter discussed each of the four work-related mental abilities and found that Plaintiff was moderately impaired in relating to others, understanding, remembering and following instructions, maintaining concentration, persistence and pace, and in withstanding the stress and pressures associated with day to day work. *Id.* at 6-7.         In elaborating on the ability to withstand stress and pressures of day to day work activities, Dr. Koricke found:

> The claimant's mental ability to withstand the stress and pressures associated with day-to-day work activity is moderately impaired due to his psychological disorders. He does show marked impairment in the area of relating and is a very depressed man who is dealing with significant physical impairment and chronic pain. He also demonstrates additional moderate impairment in the areas of attention, concentration, and pace/persistence and moderate impairment in his ability to understand, remember and follow simple instructions. In sum, Mr. Tyrpak is not viewed able to withstand the stress and pressures of working on a daily basis.

*Id.* at 7.

-23-

The ALJ reasonably found that the opinions of Drs. Sunbury, Lewis and Flynn were consistent with the record evidence and he reasonably discounted Dr. Koricke's opinion and provided more than adequate reasons for doing so.  The ALJ thoroughly reviewed each of the opinions and explained his reasons for the weight that he attributed to each.  ECF Dkt. #11-2 at 22-23.  In evaluating the weight to give these opinions, the ALJ noted that Plaintiff had initially denied having any mental impairment and noted that he did not seek specialized mental health treatment until September of 2008.  ECF Dkt. #11-2 at 20.  He noted Plaintiff's ability to work on a nearly full-time basis well after his alleged disability onset date and he further found that Plaintiff's activities were not as limited as he had presented to some of the medical providers.  In particular, the ALJ noted that Dr. Koricke indicated that Plaintiff reported spending a typical day sitting and watching television, but Plaintiff had advised other providers that he used the internet, read, worked with pottery, participated in art shows, attended art shows, spent time with his girlfriend, and was a member of the Beekeeper's Society.  *Id*. at 11-2.  The ALJ discounted Dr. Koricke's opinion as inconsistent with the record as a whole and evidence in the record supports the ALJ's finding, based upon Plaintiff's ability to work after his onset date and the report by Plaintiff to Dr. Koricke of very limited activities in comparison to the activities he reported to other providers.

**VI.**     **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

DATE: March 9, 2012                               */s/George J. Limbert*
                                                  GEORGE J. LIMBERT
                                                  UNITED STATES MAGISTRATE JUDGE

-24-